IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MICHAEL R. WEBBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SPEED CHANNEL, INC., ) | |
| ) | CIVIL NO. 3:06CV594 |
| and ) | |
| ) | |
| RICHMOND INTERNATIONAL ) | |
| RACEWAY, INC., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

This matter is before the Court, by consent of the parties, on the Defendant Speed Channel, Inc.'s ("Speed Channel") Motion for Summary Judgment (docket entry no. 7). 28 U.S.C. § 636(c)(1). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. At the Plaintiff, Michael R. Webber's ("Webber") request, the Court took the motion under advisement pursuant to Fed. R. Civ. P. 56(f) and such case precedent as Harrod's Ltd. v. Sixty Internet Domain Names, 302 F.3d 214 (4th Cir. 2002), to allow further discovery to be conducted relative to Speed Channel's motion. (Order, Dec. 14, 2006) (docket entry no. 16.) Additional discovery was thereupon undertaken and the parties filed supplemental briefing in advance of oral argument by which time the co-defendant, Richmond International Raceway, Inc. ("RIR"), had

-1-

joined in Speed Channel's Motion. (RIR's Mot. Summ. J.) (docket entry no. 19).

Argument was held on January 22, 2007, at the conclusion of which the Court orally granted the Defendants' motion. This Memorandum Opinion is intended to provide the reasoning for the granting of dispositive relief in favor of the Defendants.

### Undisputed Facts and Reasonable Inferences

On September 10, 2005, Webber attended a sporting event on property (the "fairgrounds") owned, operated, and occupied by RIR, and located in Richmond, Virginia. (Compl. ¶¶ 4, 5, 7.) Co-defendant Speed Channel also occupied property at the fairgrounds at that time. Id. ¶ 3. Because Webber was attending a NASCAR race held on RIR's premises, the parties agree that he occupied the status of an invitee. (Id. ¶ 5; Speed Channel's Supp'l Mot. Summ. J. ("Speed Channel's Supp'l Mot.") ¶ 4) (docket entry no. 17.) Primarily for crowd control purposes, Speed Channel had contracted with JHE Production Group ("JHE") to provide and erect metal barriers on the property occupied by Speed Channel. (Speed Channel's Supp'l Mot. ¶ 6.) Webber was walking through the fairgrounds on the property occupied by Speed Channel shortly before 2:00 p.m. when he alleges "he was caused to fall because of an improperly set up, placed, located, selected or designed section of the metal barrier, which made the fairgrounds unsafe for general use by the public." (Compl. ¶ 7.)

Each section of the metal barrier was forty-four inches (44") high and eight feet (8') in length. (Speed Channel's Supp'l Mot., Ex. 1 ("Howard[1] Aff.") ¶ 5.) In particular, Webber alleges that an 8 inch (8") tall base (which "juts out" perpendicularly about 8 to 12 inches on each side) of the metal barrier was the cause of his fall when his "right foot got caught under the

---

[1] Jay Howard is the President and authorized represenative of JHE. (Howard Aff. ¶ 2.)

barrier." (Pl.'s Resp. Opp'n Defs.' Supp'l Mot. Summ. J. ("Pl.'s Resp."), Ex. A, Resp. 1 (docket entry no. 22); Speed Channel's Supp'l Mot., Ex. 4 ("Webber Dep.") at 42:23-44:19; 136:10-12, Dec. 15, 2006.) The fairgrounds were "sold out" on the day of the incident, and people were "shoulder to shoulder" such that Webber had difficulty moving through the crowd. (Pl.'s Resp., Ex. B ("Hedrick Dep.")² at 25:24-26:1, Dec. 21, 2006; Webber Dep. 137:15-138:2.) Webber asserts that as he walked through the crowd, he did not see the bases of the metal barriers, and that there were no warning signs displayed to alert him that the bases were projecting into his path. (Pl.'s Resp., Ex. A, Resp. 2 (no warnings were provided); Webber Dep. 135:2-18 (barriers were not brightly painted, and there were no flags or cones near the barriers); 134:20-135:1 (stating that he did not see the base of the barriers.))³

The weather was "clear" and "sunny" when Webber fell (Webber Dep. 40:7- 41:1), and the base of the metal barrier was not obscured by grass or other natural obstruction because the barrier was located on a paved walkway. (Id. 46:11-19; Hedrick Dep. 24:21-24.) Even though Webber said the crowd was "shoulder to shoulder," he never testified that he could not see the

---

² Jeffrie Hedrick is the Senior Director of Operations for RIR. (Hedrick Dep. 5:8-11.) He is also RIR's safety coordinator. Id. 33:4-9.

³ Of the "millions of people" who have had access to the barriers over time, JHE, Speed Channel, and RIR are not aware of anyone (except Webber) who has tripped over the base of the barriers in the past. (Hedrick Dep. 57:18-58:10; Howard Aff. ¶¶ 14-17.) Webber "vigorously disputes" this factual conclusion and, citing Woods v. Woolfolk Props., Inc., 515 S.E.2d 304 (Va. 1999) and Goins v. Wendy's Int'l, Inc., 410 S.E.2d 635 (Va. 1991), asserts that the Court cannot consider such evidence in determining whether the Defendants were negligent with respect to the incident in question. (Pl.'s Resp. at 2.) Although such evidence would clearly be relevant to show that the Defendants were on notice of the alleged hazard, see Stoots v. Werner Co., No. 7:04cv00531, 2005 U.S. Dist. LEXIS 38191, at *11-14 (W.D. Va. Dec. 28, 2005), such an allegation is not made, and it is not necessary in any event for the Court to rely on such a circumstance to resolve the present motion.

base of the barrier because a person in front of him was obstructing his view. In fact, in the moments before he tripped, he has confirmed in deposition testimony that the closest person in front of him was six feet away. (Webber Dep. 127:18-23.) Webber has also admitted that prior to his fall, he passed at least ten barriers identical to the one over which he would later trip. (Id. 50:16-51:10; 137:1-7.) Accordingly, although he did not apparently see the base of the barrier, he was able to avoid the other barriers and bases while walking within a foot of the fence when he fell. (Id. 46:3-7.) Webber never looked down at the base of the barrier before the accident occurred (id. 49:5-7) and, although he was carrying two plastic bags containing souvenirs at the time of the fall (id. 125:2-14), he has not asserted that the bags obstructed his view of the barriers or the ground in front of him. Moreover, it is also noted that Webber had been attending such events at the same fairgrounds for twelve years before the incident, and that Speed Channel had hosted similar stage events presumably utilizing the same crowd control measures.[4] (Webber Dep. 23:23-26:11.)

Webber alleges that his fall and resulting injury were directly and proximately caused by the negligence of the Defendants in the inspection, design, clearing, locating, and otherwise setting up of the fairgrounds, and that the Defendants were negligent *per se* in failing to maintain the premises in a reasonably safe condition.[5] (Compl. ¶¶ 9,11.) The Defendants deny that they were negligent, arguing alternatively that even if they were, Webber was contributorily negligent

---

[4] Webber's admissions during his deposition are even more conclusive given the fact that he was deposed after Speed Channel's motion was filed and was presumably on notice as to the central issue of whether the barrier and/or base was "open and obvious."

[5] At oral argument, Webber's counsel abandoned any argument that the metal barrier contained a design defect.

as a matter of law so as to bar his requested relief for monetary damages of $1,200,000.[6]

## Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. Anderson, 477 U.S. at 247-48 (emphasis in original).

---

[6] Speed Channel also argues that Webber failed to sufficiently allege causation in his Complaint. (Speed Channel's Supp'l Mot. at 5.) Webber's Complaint alleged that the Defendants failed to use reasonable care in setting up and maintaining the fairgrounds (including its walkways) in a reasonably safe condition; that Webber fell because of an improperly erected, placed, located, or selected section of the metal barrier; and that Webber's fall was directly and proximately caused by the negligence of the Defendants in the maintenance of the fairgrounds. (Compl. ¶¶ 6-10.) Notwithstanding the fact that Speed Channel's argument would be more properly asserted pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, such allegations sufficiently plead causation for purposes of a negligence claim under the liberal notice pleading standards permitted by Rule 8 of the Federal Rules of Civil Procedure. See Burriss v. Texaco, Inc., 361 F.2d 169, 175 (4th Cir. 1966). Stated another way, Webber's Complaint afforded the Defendants fair notice of the nature and basis of his premises liability claim, and is therefore sufficient. See Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995).

"A material fact" is a fact that might affect the outcome of a party's case. See id.; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248.

As this is a diversity case, the Court must apply the substantive law of the forum state, including the forum state's choice of law rules. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). The Court sits in Virginia, and since Virginia is a traditional *lex loci* choice of law state, the substantive law of the place of the wrong (Virginia) governs the proceedings. See Dreher v. Budget Rent-A-Car Sys., Inc., 634 S.E.2d 324, 329 (Va. 2006) (citing Jones v. R.S. Jones & Assocs., 431 S.E.2d 33, 34 (Va. 1993)).

## Analysis

**1. Webber Was Contributorily Negligent**

The parties concede that Webber was an invitee of the premises owned and operated by RIR, and occupied by Speed Channel. See Pearson v. Canada Contracting Co., 349 S.E.2d 106, 110 (Va. 1986) (an invitee is "one who enters pursuant to the express or implied invitation of the owner or occupier other than for a social purpose or for his own convenience.") (citations omitted). "[A]n owner or occupant of lands...who directly or by implication, invites or induces others to go thereon or therein, owes to such person a duty to have the premises in a reasonably

safe condition, and to give warning of latent or concealed defects." Acme Mkts. v. Remschel, 24 S.E.2d 430, 433 (Va. 1943).  However, an owner is not an insurer of the invitee's safety, and thus notice is not required when the dangerous condition is "open and obvious" to a person who is exercising reasonable care for his own safety.  Id.

Typically, "the presence or absence of negligence is a question for the jury, not only where there is a conflict in the evidence on the subject, but also where there is room for a difference of opinion among reasonable men as to the proper inference which might fairly be drawn from unconflicting evidence."  Id. at 434; O'Brien v. Everfast, Inc., 491 S.E.2d 712, 715 (Va. 1997) ("Whether a danger is open and obvious is usually a jury question.") (citation omitted).  However, "[w]here there is no controversy in regard to the facts or the inferences that fairly may be drawn from them, the question of negligence is one of law" and thus properly resolved by the court.  Acme Mkts., 24 S.E.2d at 434.  The same is true of contributory negligence.  Id.  Although the Supreme Court of Virginia has specifically declined to hold that, as a matter of law, a pedestrian's failure to look down while stepping forward must constitute contributory negligence in every case, see Little Creek Inv. Corp. v. Hubbard, 455 S.E.2d 244, 246 (Va. 1995) (citing City of Suffolk v. Hewitt, 307 S.E.2d 444, 448 (Va. 1983)), the Court has nonetheless held that "[a] person who trips and falls over an open and obvious condition or defect is guilty of contributory negligence as a matter of law," Scott v. City of Lynchburg, 399 S.E.2d 809, 810 (Va. 1991) (citations omitted).

The facts of this case lead to the unmistakable conclusion that Webber was contributorily negligent.  The weather was "clear" and "sunny," and the accident occurred in the middle of the afternoon, thus rendering any question as to visibility a nullity.  (Webber Dep. 40:7-41:1; 42:13-

22.) Cf. Acme Mkts., 24 S.E.2d at 432-35 (owner's premises liability properly submitted to the jury because dispute existed as to conditions of lighting when customer stumbled over partially obscured stump in owner's parking lot). According to Webber, the base of the metal barrier over which he tripped was eight inches (8") high and jutted out perpendicularly twelve to eighteen inches (12"-18") into the area where Webber was walking. (Pl.'s Resp., Ex. A, Resp. 2; Webber Dep. 136:10-12.) However, the base was not an isolated, detached object; rather, it was appended to the barrier itself which was nearly four feet tall (4') and eight feet (8') in length. (Howard Aff. ¶ 5; Webber Dep. 46:22-47:5.) In fact, Webber noted that the barrier looked like a bicycle rack. (Webber Dep. 47:2-7.) Even assuming, *arguendo*, that the base and the metal barrier constituted a dangerous condition, they were nonetheless open and obvious dangers such that a person exercising reasonable care for his own safety should have been aware of their existence. See S. Floors & Acoustics, Inc. v. Max-Yeboah, 594 S.E.2d 908, 910 (Va. 2004) (noting that a one-foot high stack of tiles "was clearly and open and obvious hazard"); Tazewell Supply Co., Inc. v. Turner, 189 S.E.2d 347, 350 (Va. 1972) (customer could not "close her eyes" to cardboard box that was 12 to 14 inches wide and walk down the aisle without regard to its open and obvious nature).

Moreover, although Webber testified that he did not see the base of the metal barrier before he tripped on it (Webber Dep. 134:23-135:1), he conceded that the base was not obscured from sight as it was located on a flat, asphalt surface.[7] (Id. 46:11-19; Hedrick Dep. 24:21-24.)

---

[7] Webber contends that the base was black in color which obscured it from view because it rested on a black asphalt surface. (Webber Dep. 134:20-135:18.) While the Defendants strongly contest the assertion with persuasive evidence that the base was metal and "shiny silver gray in color," (Howard Aff. ¶¶ 10-11), so as to constitute a disputed fact, resolution of the issue in Webber's favor (where the evidence on summary judgment must be viewed in the light most

Webber was also familiar with the barrier's existence. He had just passed at least ten such barriers – identical to the one over which he tripped – all without incident (Webber Dep. 50:16-51:3.), and he was intimately familiar with the makeup of the premises as he had been attending NASCAR races (and visiting Speed Channel's stage attractions) at the fairgrounds for the previous twelve years. (Id. 23:23-26:11.)

Webber emphasizes that the fairgrounds were "sold out" on the day of the accident, and that there were crowds of people who were "shoulder to shoulder" such that he had difficulty walking through the fairgrounds. (Hedrick Dep. 25:24-26:1; Webber Dep. 137:15-138:2.) But he has never asserted that the crowds obstructed his view or otherwise prevented him from seeing the base over which he tripped, or the barrier to which it was attached. Indeed, in the moments before he stumbled, he acknowledges that the closest person in front of him was six feet away (Webber Dep. 127:18-23), and the presence of a crowd, alone, is not sufficient evidence to withstand summary judgment. See West v. City of Portsmouth, 232 S.E.2d 763, 766 (Va. 1977). There is no evidence that the crowd was rowdy, belligerent, or threatening, and the fact that there was a crowd was not unusual or otherwise requiring special precautions to be taken. Furthermore, although he was carrying two plastic bags containing souvenirs at the time of the fall (Webber Dep. 125:2-14), Webber does not contend that the bags obstructed his view of the barriers or the ground in front of him.

Moreover, there were no "unexpected and substantial" distractions that would have excused Webber's inattentiveness on the day in question. In Southern Floors, a customer tripped

---

favorable to the non-moving party) is insufficient to overcome the conclusive weight of the other factors that rendered the barrier and its base "open and obvious." See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.

over a foot-high stack of tiles in an aisle of a grocery store and broke his ankle.  594 S.E.2d at 909.  On the evening of the accident, employees of a flooring contractor were installing new floor tiles in the aisle where the customer was injured.  Id. at 909-10.  The employees had spread glue on part of the floor of the aisle an hour before the customer entered, and they were waiting for the glue to dry.  Id. at 910.  The customer testified that he wasn't aware that work was being performed on the floors when he entered the aisle.  Id.  He also testified that he did not see the stack of tiles he eventually tripped over, even though he had walked past them on his way into the aisle as he was looking at a freezer case for frozen food.  Id.  While standing in the aisle, an employee of the flooring company yelled at the customer and told him to "go back" because he was standing in the glue that had not yet dried.  Id.  Distracted, and believing that the employee was indicating that "something was falling toward him," id., the customer quickly turned to exit the aisle and tripped over a "foot-high stack of tiles placed next to the freezer unit," breaking his ankle.  Id.  The customer filed suit, but the grocery store defendant claimed he was contributorily negligent as a matter of law, arguing that the tiles the customer tripped over were an open and obvious condition which he noticed or should have noticed when he entered the aisle.  Id.  The customer argued in turn that he was distracted by the yelling employee, and that this distraction excused his failure to see the 12-inch high stack of tiles.

      The Supreme Court of Virginia held that the customer was not, as a matter of law, contributorily negligent.  The Court first noted that "more is needed than a simple allegation of a distraction to create a jury issue.  It is necessary for the plaintiff to establish that his excused inattention was reasonable, *i.e.*, that the distraction was "*unexpected and substantial*."  Id. (citation and internal brackets omitted, and emphasis added).

> While the one-foot high stack of tiles [the customer] tripped over was clearly an open and obvious hazard, [the customer] offered evidence of an extrinsic condition, in the form of the [flooring company's] employee's yelling and pointing to excuse his inattention. If believed, this condition was unexpected, placed him in fear of bodily harm, and constituted a substantial distraction.

Id. at 910-11. Although the Court held the customer was not contributorily negligent, the Southern Floors decision is nonetheless instructive for purposes of resolving the instant motion. First, the Court held a 12-inch stack of tiles to be "clearly an open and obvious hazard." Id. at 910. Here, Webber tripped over an 8-inch tall base that jutted out 12 to 18 inches from an appended metal barrier that was four feet tall. Per Southern Floors, the impediment over which Webber fell was clearly an open and obvious hazard. Second, while in Southern Floors, the employee's yelling and pointing at the customer excused the customer's inattention at failing to notice the open and obvious stack of tiles, there is no such "unexpected and substantial" distraction here that would have kept Webber from properly observing the metal barrier or its base. Id. at 911. Even though the fairgrounds were crowded, that did not constitute an unexpected distraction. More importantly, however, Webber never testified that the crowds inhibited his vision or otherwise prevented or distracted him from viewing the crowd control barrier or its base. See Town of Hillsville v. Nester, 205 S.E.2d 398, 399 (Va. 1974) (injured pedestrian argued that people walking in front of her blocked her view from seeing defect in sidewalk; but the court rejected the argument because the plaintiff produced no evidence "to show that those ahead of her prevented her from seeing the defect."). No one was yelling or screaming at Webber, and there is no evidence that anyone was even talking to him or otherwise did anything that may have caused him to stumble over the barrier. The barrier was stationary,

and Webber simply tripped over it. Although the Court has difficulty concluding that the base of the metal barrier constituted an inherently dangerous condition for which the Defendants would have been required to warn invitees like Webber if the hazard were concealed, the Court finds that, even if it did constitute a hazard, the barrier and the base were open and obvious dangers to which a reasonable person in Webber's circumstances should have been aware.

Accordingly, Webber was contributorily negligent as a matter of law. He could not "close his eyes" to an object that extended twelve to eighteen inches into the walkway and which was attached to a four-foot tall, eight-foot long metal barrier that was unobstructed from plain view. The lighting conditions were favorable, Webber had passed numerous such barriers immediately beforehand without incident, he was familiar with the premises from prior visits, and there existed no "unexpected and substantial" distraction that would excuse his inattention. S. Floors, 594 S.E.2d at 910-911; Scott, 399 S.E.2d at 810 (falling over an open and obvious condition renders one contributorily negligent as a matter of law); Tazewell, 189 S.E.2d at 350 (customer in well lit store was contributorily negligent as a matter of law when she fell over a cardboard box that was "12 to 14 inches wide, 12 to 14 inches high" even though she never saw the box either before or after her fall because had she been looking where she was going, she would have seen the box that was in plain view); cf. Little Creek, 455 S.E.2d at 248 (reasonable people could disagree as to employee invitee's contributory negligence in falling over a muffler in a parking lot because although the muffler was in "plain view," and none of the employees in front of the invitee tripped on the muffler, none of the employees warned the invitee of the muffler's presence, and the fall occurred at night in "dark, rainy, and very windy" conditions where the lighting was "dim."); Acme Mkts., 24 S.E.2d at 434 (issue of invitee's contributory

negligence properly submitted to a jury where lighting conditions were disputed in stark contrast to the facts of this case).

The evidence demonstrates conclusively that the circumstances surrounding Webber's fall are "comparable to the situation of a pedestrian inattentively walking on a sidewalk, in well-lit or daylight conditions, without distractions, alone, and in clear weather." Little Creek, 455 S.E.2d at 248. Webber could not, in the exercise of ordinary care, effectively "close [his] eyes" to the open and obvious conditions confronting him at the fairgrounds. See Gottlieb, 104 S.E.2d at 747. While Webber was not required to keep his eyes fixed constantly upon the walkway ahead of him, he could not "walk heedlessly along in complacent faith that his path [was] free and clear of pitfalls and obstacles" that were open and obvious. Town of Hillsville, 205 S.E.2d at 399. There being no material fact in dispute, the Court concludes that Webber was contributorily negligent as a matter of law.

## 2. The Defendants Were Not Negligent *Per Se*

Since Webber has failed in his common law negligence claim, his negligence *per se* allegation can only survive if he has produced evidence supporting a determination that: (1) the Defendants violated a statute enacted for public safety; (2) that Webber belongs to the class of persons for whose benefit the statute was enacted; (3) that the harm suffered was of the type against which the statute was designed to protect; and (4) that the statutory violation was a proximate cause of the injury. See Halterman v. Radisson Hotel Corp., 523 S.E.2d 823, 825 (Va. 2000). Webber has not referenced any applicable statute or regulation that would support such a claim and, accordingly, any negligence *per se* argument must also fail.

For all these reasons, the Defendant's Motion must be GRANTED.

An appropriate Order shall issue.

                                                                                                        /s/_____
                                                                                                                             Dennis W. Dohnal
                                                                                                       United States Magistrate Judge

Date: 1/25/07